UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

    v.

CHRISTOPHER COLEMAN

Case No. 21 CR 52

Judge Sara L. Ellis

## GOVERNMENT'S RESPONSE TO
## DEFENDANT'S MOTION TO DISMISS

Christopher Coleman is charged with being a prohibited person—in this case, a convicted felon—in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). Defendant now contends that the principles articulated in *New York State Rifle & Pistol Ass'n v. Bruen,* 142 S.Ct. 2111 (2022), mean that Section 922(g)(1) is unconstitutional both on its face and as applied to him. Dkt. 51. But defendant's challenge to the constitutionality of Section 922(g)(1) is without merit. As more than 100 federal district court opinions have held since *Bruen* was decided, including two opinions issued from judges in this district, nothing in the Supreme Court's decision casts doubt on the ability of the federal government to prohibit convicted felons, including defendant, from possessing a firearm. This Court should deny defendant's motion.

## I. BACKGROUND

On December 6, 2020, a Chicago Police Department officer monitoring police observation device ("POD") footage observed a passenger, later determined to be defendant, in a grey sedan holding a pistol. Officers responded to the area and located the car. As they approached, defendant exited the front door and ran. Officers

pursued him a short distance, during which he removed a gun from his waistband and threw it. Officers arrested defendant and recovered the gun, a loaded Glock pistol with an extended magazine and an attached Glock switch, which causes the gun to fire fully automatically.

Defendant, who has a criminal record that includes felony convictions, was prohibited from possessing a firearm under 18 U.S.C. § 922(g)(1). That statute provides that "[i]t shall be unlawful for any person . . . who has been convicted in any court of, a crime punishable by imprisonment for a term exceeding one year" to ship, transport, possess, or receive any firearm or ammunition in or affecting interstate or foreign commerce.[1] In particular, defendant has prior adult felony convictions in Illinois for attempted armed robbery/armed violence (2014), possession of a controlled substance (2011), and receive/possess/sell stolen vehicle (2011).

## II.  SECTION 922(G)(1)'S PROHIBITION ON GUN POSSESSION BY FELONS IS CONSTITUTIONAL.

### A.  Legal Standard

The Second Amendment provides: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *District of Columbia v. Heller*, the Supreme Court held that the Second Amendment guarantees the right of "law-abiding, responsible citizens" to keep and bear arms for self-defense. 554 U.S. 570, 635 (2008). The Court cautioned, however, that the right to keep and bear arms "is not unlimited"

---

[1]  Section 922(g)(1) concerns any person "who has been convicted in any court of a crime punishable by imprisonment for a term exceeding one year." In this filing, the government refers to such individuals as felons.

and remains subject to "presumptively lawful regulatory measures," including "longstanding prohibitions on the possession of firearms by felons." *Id*. at 626, 627 n.26. Two years later, the Supreme Court extended *Heller* to state and local governments, while "repeat[ing] [the] assurances" that it "made . . . clear" in *Heller* that its "holding did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons . . . .'" *McDonald v. City of Chicago*, 561 U.S. 742, 786 (plurality) (quoting *Heller*, 554 U.S. at 626-27).

More recently, in *Bruen*, the Court again considered the meaning of the Second Amendment, this time, in connection with a New York licensing scheme which allowed authorities to deny concealed carry permits even to those who met threshold criteria. In so doing, the Court articulated an analytical framework for determining whether a firearm regulation is constitutional, directing courts to "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Bruen,* 142 S.Ct. at 2131. This analysis involves two questions. First, a court must consider whether "the Second Amendment's plain text covers an individual's conduct," and if it does, then "the Constitution presumptively protects that conduct." *Bruen,* 142 S.Ct. at 2129-30. In that scenario, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2130. "Only then may a court conclude that the individual's conduct falls outside the Second Amendment's unqualified command." *Id*. (internal quotation marks omitted).

As the government details next, under *Bruen*'s "text and history" test, § 922(g)(1) remains a permissible restriction on firearms possession because felons do not fall within the textual purview of the Second Amendment, and even if they did, § 922(g)(1) is still constitutionally permissible because the statute is consistent with this nation's historical regulation of firearms. This conclusion is appropriate under *Bruen*, which repeatedly stressed that the right to bear arms belongs only to "'law-abiding, responsible citizens'" and which said nothing to cast doubt on the constitutionality of § 922(g)(1), instead recognizing that the right to keep and bear arms is subject to reasonable restrictions. 142 S.Ct. at 2131 (quoting *Heller*, 554 U.S. at 635); *see also id.* at 2156-57, 2162.

Additionally, upholding § 922(g)(1) as constitutional would be consistent with pre-*Bruen* Seventh Circuit precedent, including multiple cases observing that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens, including felons." *See Kanter v. Barr*, 919 F.3d 437, 446 (7th Cir. 2019) (quoting *United States v. Yancey*, 621 F.3d 681, 684-85 (7th Cir. 2010) (per curiam) (internal quotation marks omitted)).

In stark contrast, defendant cites no authority to support his argument. Nor could he. Every federal court to have addressed the constitutionality of § 922(g)(1) post-*Bruen*, of which the government is aware, has concluded that the statute

4

remains constitutional.[2] Two courts in the Northern District of Illinois are among that group. *See United States v. Garrett*, No. 18 CR 880 at Dkt. 144 (N.D. Ill. Jan. 11, 2023) (Bucklo, J.); *United States v. Price*, No. 21 CR 164 at Dkt. 122 (N.D. Ill. Feb. 13, 2023) (Kennelly, J.). This Court should rule the same and deny defendant's motion.[3]

### B. Possession of firearms by convicted felons is not protected under the plain text of the Second Amendment.

The Second Amendment, by its terms, protects "the right of the people to keep and bear arms." U.S. Const. amend. II. Under *Bruen*, a court must first consider whether Section 922(g)(1) regulates conduct that is covered by that plain text. 142 S.Ct. at 2129-30. The Supreme Court has consistently interpreted that text to apply only to "law-abiding, responsible citizens" and, by extension, to exclude convicted felons, like defendant. *See Heller*, 554 U.S. at 635; *Bruen*, 142 S.Ct. at 2131.

In *Heller,* the Supreme Court struck down the District of Columbia's ban on handgun possession in the home, explaining that the Second Amendment confers an individual "right of law-abiding, responsible citizens to use arms in defense of hearth and home." 554 U.S. at 635. *Heller* expressly contemplated that certain citizens were

---

[2]   The government is aware of 104 rulings upholding the constitutionality of § 922(g)(1) post-*Bruen*. It has attached a list of those rulings as Exhibit A to this response.

[3]   Two other judges in this district have upheld the constitutionality of other federal statutes criminalizing the possession of firearms post-*Bruen*. *See United States v. Seiwert*, No. 20 CR 443 at Dkt. 89 (N.D. Ill. Sept. 28, 2022) (Gettleman, J.) (upholding the constitutionality of § 922(g)(3), which prohibits the possession of firearms by unlawful drug users); *United States v. Carbajal-Flores*, No. 20 CR 613 at Dkt. 74 (N.D. Ill. Dec. 19, 2022) (Coleman, J.) (upholding the constitutionality of § 922(g)(5), which prohibits the possession of firearms by individuals who are unlawfully in the United States).

"disqualified" from keeping or bearing arms under the Second Amendment. *Id.* at 635. ("*Assuming that Heller is not disqualified from the exercise of Second Amendment rights*, the District must permit him to register his handgun and must issue him a license to carry it in the home.") (emphasis added). Most relevant to defendant's motion, *Heller* explained that "nothing in [the Court's] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill," and further cautioned: "We identify these presumptively lawful regulatory measures only as examples; our list does not purport to be exhaustive." *Id.* at 626-27 & n.26; *see also McDonald*, 561 U.S. at 786 (reaffirming *Heller*'s assurance that firearms regulation is not prohibited by the Second Amendment).

*Bruen* did not deviate from *Heller's* principle that the right to bear arms belongs only to "law-abiding, responsible citizens." 142 S.Ct. at 2131 (quoting *Heller*, 554 U.S. at 635). Indeed, *Bruen* characterized the holders of Second Amendment rights as "law-abiding" citizens no less than 14 times. For example, in *Bruen*, the Court concluded that the New York statute "violates the Fourteenth Amendment in that it prevents *law-abiding* citizens with ordinary self-defense needs from exercising their right to keep and bear arms," *id.* at 2156 (emphasis added); explained that the Second Amendment "'elevates above all other interests the right of *law-abiding*, responsible citizens to use arms' for self-defense," *id.* at 2131 (quoting *Heller*, 554 U.S. at 635) (emphasis added); and instructed courts to identify historical analogues to

modern firearm regulations by assessing "how and why the regulations burden a *law-abiding* citizen's right to armed self-defense," *id.* at 2133 (emphasis added).[4]

Moreover, like *Heller*, *Bruen* did not question the constitutionality of "shall-issue" concealed-carry licensing regimes, employed by 43 states, that "require applicants to undergo a back ground check or pass a firearms safety course" to ensure that "those bearing arms" are "law-abiding, responsible citizens." *Id.* at 2138 n.9 (internal quotation marks omitted).

Concurring opinions in *Bruen* also emphasized the narrow scope of the Court's holding. Justice Alito, concurring, wrote that the Court had not "disturbed anything that we said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns." *Id.* at 2157; *see id.* at 2159 ("All that we decide in this case is that the Second Amendment protects the right of law-abiding people to carry

---

[4]  *See also Bruen* 142 S.Ct. at 2122 ("[T]he Second and Fourteenth Amendments protect the right of an ordinary, law-abiding citizen to possess a handgun in the home for self-defense."); *id.* ("[O]rdinary, law-abiding citizens have a similar right to carry handguns publicly for their self-defense."); *id.* at 2125 (describing petitioners as "law-abiding, adult citizens"); *id.* at 2133 (referencing New York's argument that "sensitive places where the government may lawfully disarm law-abiding citizens include all places where people typically congregate" (quotations omitted)); *id.* at 2134 (reiterating that petitioners are "two ordinary, law-abiding, adult citizens"); *id.* at 2135 n.8 ("[I]n light of the text of the Second Amendment, along with the Nation's history of firearm regulation, we conclude below that a State may not prevent law-abiding citizens from publicly carrying handguns . . . ."); *id.* at 2138 ("Nor is there any such historical tradition limiting public carry only to those law-abiding citizens who demonstrate a special need for self-defense."); *id.* at 2138 n.9 (noting shall-issue public carry licensing laws "do not necessarily prevent 'law-abiding, responsible citizens from exercising their Second Amendment right to public carry" but rather "are designed to ensure only that those bearing arms in the jurisdiction are, in fact, law-abiding, responsible citizens" (quotation omitted)); *id.* at 2150 ("none [of the historical regulations surveyed] operated to prevent law-abiding citizens with ordinary self-defense needs from carrying arms in public for that purpose"); *id.* at 2156 ("Nor, subject to a few late-in-time outliers, have American governments required law-abiding, responsible citizens to demonstrate a special need for self-protection . . . ." (quotations omitted)).

a gun outside the home for self-defense . . . .”). Justice Kavanaugh, joined by Chief Justice Roberts in a separate concurring opinion, noted the “presumptively lawful regulatory measures” described in *Heller*, including the “longstanding prohibitions on the possession of firearms by felons and the mentally ill.” *Id*. at 2162. Moreover, Justice Kavanaugh's concurrence observed that *Bruen* only concerned “may-issue” licensing regimes. *Id*. It did not reach “shall-issue” licensing regimes—which commonly disqualify felons and the mentally ill, and which, he indicated, are likely constitutional. *Id*.

Heller's* and *Bruen's* repeated emphasis that the right to bear arms belongs only to “law-abiding, responsible citizens” directly refutes defendant's argument that “the people” protected under the Second Amendment includes convicted felons. The frequency with which *Bruen* employed the phrase “law abiding, responsible citizens”—rather than a broader reference to “the people” or “all Americans”— strongly indicates that this was a deliberate choice of language that should be afforded due weight. As Judge Kennelly noted in his recent memorandum opinion and order rejecting a *Bruen*-based constitutional challenge to § 922(g)(1):

> Indeed, the *[Bruen]* majority used the phrase “law-abiding” to describe “the people” whose rights the Second Amendment guarantees no fewer than fourteen times, including in its concluding paragraph.
>
> \* \* \*
>
> The government argues that those charged under section 922(g)(1), by definition, are not law-abiding citizens but rather are among the classes of individuals whose rights to bear arms historically have been restricted for public safety. The Court agrees with the government. *Section 922(g)(1) is a constitutional restriction on firearms possession because convicted felons— whether their underlying felony was violent or not—are, by definition, not law-*

8

*abiding and therefore do not fall within the textual purview of the Second Amendment.*

*See Price*, No. 21 CR 164, Dkt. 122 at 4-5 (emphasis added). *Accord Garrett*, No. 18 CR 880, Dkt. 144 at 4 (Bucklo, J.) ("[T]he [*Bruen*] majority uses the phrase 'law-abiding' to describe 'the people' whose rights the Second Amendment guarantees no fewer than fourteen times."); *Seiwert*, No. 20 CR 443, Dkt. 89 (N.D. Ill. Sept. 28, 2022) (Gettleman, J.) (right defined in *Heller* "extends only to 'the people,' which encompasses only 'law-abiding, responsible' citizens who keep or bear arms for 'lawful purposes'").

In short, the possession of firearms by convicted felons is not protected under the plain text of the Second Amendment.

### C.     Section 922(g)(1) is consistent with historical traditions.

Even if this Court were to conclude that the Second Amendment covers defendant's conduct, defendant still cannot prevail on his *Bruen*-based argument. Under *Bruen*, even where the plain text of the Second Amendment covers the challenged conduct, the government may still justify a challenged restriction by showing "that its firearms regulation is part of the historical tradition that delimits the outer bounds of the right to keep and bear arms." 142 S.Ct. at 2127. Because § 922(g)(1) is in keeping with this nation's historical traditions, this Court should not declare it unconstitutional.

*Bruen* contemplated two avenues of historical inquiry. The first is what the Supreme Court described as a "straightforward historical inquiry" which applies when "a challenged regulation addresses a general societal problem that has

persisted since the 18th century." 142 S.Ct. at 2131. The second avenue of inquiry that *Bruen* directed is by "analogy." *Id.* at 2132. *Bruen* recognized that "[t]he regulatory challenges posed by firearms today are not always the same as those that preoccupied the Founders in 1791 or the Reconstruction generation in 1868." *Id.* Where there is no such straightforward correspondence*, Bruen* directed courts to consider "historical analogies" to the challenged law to determine whether it resembles constitutionally accepted restrictions. *Id. Bruen* further explained: "Like all analogical reasoning, determining whether a historical regulation is a proper analogue for a distinctly modern firearm regulation requires a determination of whether the two regulations are 'relevantly similar.'" *Id.* (quoting C. Sunstein, *On Analogical Reasoning*, 106 Harv. L. Rev. 741, 773 (1993)).

Consistent with the methodology set forth in *Bruen*, the D.C. Circuit Court of Appeals in *Medina v. Whitaker* engaged in a comprehensive historical analysis demonstrating that § 922(g)(1) is consistent with this nation's history and tradition of firearm regulation. 913 F.3d 152, 158 (D.C. Cir. 2019) (citation omitted). In *Medina,* the D.C. Circuit held that "those convicted of felonies are not among those entitled to possess arms." *Id.* at 160. The D.C. Circuit explained that when this nation was founded, convicted felons faced serious repercussions, such as "a total forfeiture of either lands, or goods, or both" as well as capital punishment. *Id.* at 158. With respect to capital punishment in particular, *Medina* explained that "[f]elonies were so connected with capital punishment that it was hard to separate them." *Id.* (citation omitted); *see also id.* (capital punishment was "the standard penalty" for felonies

10

during the colonial era); *id.* (describing capital punishment for felonies as "ubiquitous" in the late 18th century). *Medina* further explained that historically, felony crimes were not just limited to "crimes of violence, such as murder and rape"; they also included nonviolent felony offenses such as counterfeiting currency, embezzlement, desertion from the army, forgery, and horse theft. *Id.* With this historical perspective in mind, the *Medina* court concluded that it is difficult to conclude that, on the one hand, our nation's historical tradition does not permit disarming convicted felons, when, on the other hand, our nation would permit executing convicted felons, including non-dangerous ones. 913 F.3d at 158 ("[I]t is difficult to conclude that the public, in 1791, would have understood someone facing death and estate forfeiture to be within the scope of those entitled to possess arms.").

In addition, in *Range v. Garland*, 53 F.4th 262, 273 (3d Cir. 2022), a Third Circuit three-judge panel rigorously applying *Bruen's* "text and history" test to Section 922(g)(1) to conclude that the statute "comports with legislatures' longstanding authority and discretion to disarm citizens unwilling to obey the government and its laws." Although the Third Circuit later vacated the *Range* panel's opinion after granting a petition for rehearing *en banc* (2023 WL 118469 (3d Cir. Jan. 6, 2023)), this Court may still consider the historical analysis set forth in the *Range* panel opinion which, as explained next, is consistent with *Bruen*.[5]

---

[5] The Third Circuit held an *en banc* oral argument in *Range* on February 15, 2023. A decision remains pending.

*Range*'s historical analysis kept at its forefront *Bruen*'s warning that "'not all history is created equal,'" its "catalogu[ing] [of] sources that are most probative of the right's original meaning," and its emphasis on "'English history dating from the late 1600s, along with American colonial views leading up to the founding.'" 53 F.4th at 274 (quoting *Bruen*, 142 S.Ct. at 2127, 2136). In applying this methodology, *Range* concluded that "the pertinent historical periods were replete with laws 'relevantly similar' to the modern prohibition on felon firearm possession because they categorically disqualified people from possessing firearms based on a judgment that certain individuals were untrustworthy parties to the nation's social compact." *Id.* (citation omitted).

Starting in the late seventeenth century in England and continuing through colonial America, the Revolutionary War, and ratification debates, *Range* identified a wide range of historical support for the ability of legislatures to disarm those not considered to be law-abiding. 53 F.4th at 273-82. As just one example of the historical support it found, *Range* discussed the proposed amendment of the Dissent of the Minority in Pennsylvania—an essay published by Pennsylvania's anti-Federalist delegates during debates over the Constitution's ratification. *Id.* at 279-80. *Heller*, the Seventh Circuit, and the Third Circuit all have recognized this particular source as a "highly influential" "precursor" to the Second Amendment. *See United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc); *Range*, 53 F.4th at 280 ("[T]he Supreme Court has viewed [the amendment] as 'highly influential' to the adoption of

the Second Amendment.") (quoting *Heller*, 554 U.S. at 604)). The amendment proposed by the Dissent of the Minority stated:

> [T]he people have a right to bear arms for the defence of themselves and their own State or the United States, or for the purpose of killing game; and no law shall be passed for disarming the people or any of them *unless for crimes committed*, or real danger of public injury from individuals.

*Range*, 53 F.4th at 280 (quoting 2 Bernard Schwartz, The Bill of Rights: A Documentary History 665 (1971)) (emphasis in original). *Range* explained: "As the Dissent of the Minority's proposal makes clear, members of the Founding generation viewed "[c]rimes committed—violent or not—[as] . . . an independent ground for exclusion from the right to keep and bear arms." *Id.* (quoting *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 336, 349 (3d Cir. 2016) (alterations and omissions in original).

Moreover, like *Medina*, *Range* analyzed the severity of the consequences that convicted felons faced at the time of this nation's founding. 53 F.4th at 280-81. The *Range* panel explained that "[h]istorically, several non-violent felonies were punishable by death and forfeiture of the perpetrator's entire estate." *Id.* at 280. "*A fortiori*," the *Range* panel continued, "given the draconian punishments that traditionally could be imposed for these types of non-violent felonies, the comparatively lenient consequence of disarmament under 18 U.S.C. § 922(g)(1) is permissible." *Id.*

At bottom, the *Range* panel drew three critical lessons from its historical review that can inform this Court's analysis:

First, legislatures traditionally used status-based restrictions to disqualify categories of persons from possessing firearms. Second, they did so not merely based on an individual's demonstrated propensity for violence, but rather to address the threat purportedly posed by entire categories of people to an orderly society and compliance with its legal norms. Third, legislatures had, as a matter of separated powers, both authority and broad discretion to determine when individuals' status or conduct evinced such a threat sufficient to warrant disarmament.

53 F.4th at 281-82.

This historical evidence notwithstanding, defendant claims that, "there are no 'distinctly similar' founding era laws demonstrating a tradition of broadly prohibiting firearms possession by felons." Dkt. 51 at 8. Therefore, according to defendant, because § 922(g)(1) was not enacted until 1938, the statute cannot possibly be consistent with the nation's historical tradition of firearm regulation. Dkt. 51 at 8–9. But case law confirms that Section 922(g)(1) is consistent with historical traditions. In *National Rifle Ass'n of America, Inc. v. Bureau of Alcohol, Tobacco, Firearms and Explosives,* 700 F.3d 185, 196 (5th Cir. 2012), *abrogated by Bruen,* 142 S.Ct. at 2111, for example, the Fifth Circuit noted that *Heller* demonstrated that "a regulation can be deemed 'longstanding' even if it cannot boast a precise founding-era analogue." 700 F.3d at 196; *see also id.* ("After all, *Heller* considered firearm possession bans on felons and the mentally ill to be longstanding, yet the current version of these bans are of mid-20th century vintage."). In *United States v. Booker,* 644 F.3d 12, 23-24 (1st Cir. 2011), the First Circuit noted that "the federal felony firearm possession ban [under § 922(g)(1)] bears little resemblance to laws in effect at the time the Second Amendment was ratified." But at the same time, the First Circuit acknowledged that *Heller's* reference to "longstanding prohibitions" means that statutory prohibitions on

14

the possession of weapons by some persons *are* proper and that "'the legislative role did not end in 1791.'" *Id.* (*quoting Skoien*, 614 F.3d at 640). *Booker* thus concluded that "exclusions" to the Second Amendment "need not mirror limits that were on the books in 1791" and that it cannot be said that "the relative age of a regulation is the key to its constitutionality." *Id.* at 24.

Defendant's dismissal of *Heller's* "longstanding prohibitions" language as simply dicta also fails. Dkt. 51 at 9–10. In *United States v. McCane,* 573 F.3d 1037, 1048 (10th Cir. 2009), Judge Tymkovich, in his concurring opinion, noted that, while *Heller*'s "longstanding prohibitions" passage was dictum, "Supreme Court dicta binds us 'almost as firmly as . . . the Court's outright holdings" and that "[t]his is particularly so where, as here, the dictum is recent and not enfeebled by later statements." 573 F.3d at 1047 (quoting *Surefoot LC v. Sure Foot Corp.,* 531 F.3d 1236, 1243 (10th Cir. 2008)).[6] In the case of *Heller*, its "longstanding prohibitions" passage was hardly enfeebled by later Supreme Court cases. As noted earlier, *Heller*'s "notion" that some categorical exclusions of firearm possession are constitutional was affirmed by the Supreme Court in *McDonald,* "where it 'repeat[ed] [its] assurances that *Heller*'s dictum regarding disqualifications on firearm possession by felons was valid." *See United States v. Williams,* 616 F.3d 685, 692 (7th Cir. 2010) (quoting *McDonald,* 103 S.Ct. at 3047). As also noted earlier, the passage was expressly underscored by

---

6   After this initial acknowledgment, Judge Tymkovich continued in his concurring opinion to note that the longstanding nature of dispossession prohibitions was "far from clear" and "more recent authorities have *not* found evidence of longstanding dispossession laws." 573 F.3d at 1048 (emphasis in original).

concurring opinions in *Bruen*. *See* 142 S.Ct. at 2157 (writing that *Bruen* had not "disturbed anything that we said in *Heller* or [*McDonald*] about restrictions that may be imposed on the possession or carrying of guns") (Alito, J., concurring); *id.* at 2162 (noting the "presumptively lawful regulatory measures" described in *Heller*, including the "longstanding prohibitions on the possession of firearms by felons and the mentally ill") (Kavanaugh, J., concurring).

In sum, based on the extensive historical analysis set forth above, and every district court to address the issue post-*Bruen*, this Court should uphold the constitutionality of Section 922(g)(1).

**D.    Upholding Section 922(g)(1) as constitutional is consistent with the Seventh Circuit precedent.**

Holding Section 922(g)(1) constitutional is consistent with the Seventh Circuit's pre-*Bruen* caselaw, which has upheld the statute even when the underlying felony conviction is for a nonviolent offense. *E.g., Hatfield v. Barr*, 925 F.3d 950, 952 (7th Cir. 2019) (noting that *Heller* and *McDonald* treat felon-dispossession statutes as valid and holding that Section 922(g)(1) may be applied to a felon convicted of fraud).[7] *See Price*, No. 21 CR 164, Dkt. 122 at 3–4 (rejecting argument that under Seventh Circuit precedent, § 922(g)(1) is unconstitutional, even as applied to non-violent or non-dangerous felons); *Garrett*, No. 18 CR 880, Dkt. 144 at 7–8 ("Nothing

---

[7]    Pre-*Bruen*, every federal court of appeals to have addressed the issue had held that Section 922(g)(1) does not violate the Second Amendment on its face. *See Kanter*, 919 F.3d at 442 (collecting cases). Post- *Bruen*, the Seventh Circuit has not addressed the constitutionality of Section 922(g)(1), although there is a pending case before that court in which plaintiff-appellant, who has a felony mail fraud conviction, has advanced an as-applied challenge to Section 922(g)(1)'s constitutionality. *See Atkinson v. Garland*, No. 22-1557 (7th Cir.). The Circuit held oral argument on November 8, 2022. A decision remains pending.

in defendant's submissions suggests that the Seventh Circuit takes a different view of the Supreme Court's jurisprudence or that its own cases compel a contrary conclusion.").

Critically, in line with *Bruen*, the Seventh Circuit has identified historical support for barring felons from possessing firearms. In *Yancey*, for example, the Court noted that "most scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm 'unvirtuous citizens'" such as felons. 621 F.3d at 684–85 (citation omitted); *see also Kanter*, 919 F.3d at 446 (quoting *Yancey*, 621 F.3d at 684-85).

A robust discussion of the historical basis for prohibiting felons from possessing firearms can also be found in *Skoien,* 614 F.3d at 640 (quoting *Heller*, 554 U.S. at 604). There, the Seventh Circuit cited the "highly influential" Dissent of the Minority from the Pennsylvania ratifying convention. In the essay published by Pennsylvania's anti-Federalist delegates during debates over the Constitution's ratification the Dissent of the Minority asserted that citizens have a personal right to bear arms "unless for crimes committed, or real danger of public injury." *Id. Skoien* also observed "[m]any of the states, whose own constitutions entitled their citizens to be armed, did not extend this right to persons convicted of crime." *Id*. (citing Stephen P. Halbrook, *The Founders' Second Amendment* 273 (2008), and C. Kevin Marshall, *Why Can't Martha Stewart Have a Gun?*, 32 Harv. J.L. & Pub. Policy 695, 700-13 (2009)). In light of this history, the Seventh Circuit determined that "some categorical disqualifications are permissible" under the Second Amendment. *Id*. at 641.

17

Finally, in *Kanter*, the Court described the case law—and underlying historical sources—as "suggest[ing] that felons were not historically understood to have Second Amendment rights." 919 F.3d at 445–46; *see also id.* at 446 n.6 (citing numerous legal historians who have endorsed the view that the government could disarm felons).

To be sure, *Kanter* did not resolve the historical scope of the Second Amendment. 919 F.3d at 447. And *dissenting* Seventh Circuit judges have suggested that the historical record does not conclusively support a categorical ban on firearm possession by felons. *Id.* at 464 (Barrett, J., dissenting) ("History does not support the proposition that felons lose their Second Amendment rights solely because of their status as felons."); *id.* at 458–62 (Barrett, J., dissenting) (describing as "misguided" the argument that the disarmament of felons is supported by the severity with which felons were punished at the time of the nation's founding); *Skoien*, 614 at 650 (Sykes, J., dissenting) (noting scholarly "disagree[ment] about the extent to which felons . . . were considered excluded from the right to bear arms during the founding era," and that "[t]he historical evidence is inconclusive at best").

But these dissents pre-date *Bruen*. Therefore, they were necessarily written without the benefit of *Bruen's* repeated use of the phrase "law-abiding citizens" to describe the scope of the Second Amendment. And, as a result, they naturally contemplated different results. *See e.g.*, *United States v. Meza-Rodriguez*, 798 F.3d 664, 669 (7th Cir. 2015) (in a pre-*Bruen* analysis of the constitutionality of Section 922(g)(5), which prohibits the possession of firearms by unlawful "aliens," expressing reluctance "to place more weight on [*Heller's*] passing references" to the phrase "law-

abiding citizens"). But given the frequency with which *Bruen* emphasized that "the people" contemplated by the Second Amendment were "law-abiding" ones, that deliberate choice of language should be afforded the weight it deserves in order to conclude that the Second Amendment does not protect the possession of firearms by any convicted felon, including defendant.

The aforementioned dissents were also written without the benefit of *Bruen*'s historical analogue inquiry, which, as discussed above, the D.C. Circuit Court of Appeals faithfully applied in *Medina*. Defendant points to then-Judge Barrett's statement in *Kanter* that "[f]ounding-era legislatures did not strip felons of the right to bear arms simply because of their status as felons." *See* Dkt. 51 at 6–8 (citing *Kanter*, 919 F.3d at 451 (Barrett, J., dissenting). But aside from being a dissenting opinion, that statement cannot be dispositive, given *Bruen*'s directive that courts may consider historical analogues to support modern-day firearm regulations. As the Court explained in *Bruen*, the government need only "identify a well-established and representative historical *analogue*, not a historical *twin*." 142 S.Ct. at 2133 (emphasis in original). "So even if a modern-day regulation is not a dead ringer for historical precursors, it still may be analogous enough to pass constitutional muster." *Id.* And as discussed above, consistent with *Medina*, the government has shown that there are historical analogues demonstrating that those whose criminal records evince disrespect for the law are not law-abiding citizens entitled to possess firearms.

In short, although the Seventh Circuit has not previously resolved the historical scope of the Second Amendment, its prior analysis "suggest[ing] that felons

19

were not historically understood to have Second Amendment rights," *Kanter*, 919 F.3d at 445, is consistent with *Bruen*'s repeated use of the phrase "law-abiding" citizens to describe the people who hold the right.

## E. Defendant's "as applied" challenge to the constitutionality of Section 922(g) also fails.

Defendant incorrectly claims that the government cannot meet its burden of establishing that Section 922(g)(1), as applied to him, is "consistent with the Nation's historical tradition of firearm regulation." Dkt. 51 at 10. Defendant's "as applied" challenge to Section 922(g)'s constitutionality should be rejected.

The Seventh Circuit has never actually upheld an "as applied" Second Amendment challenge to Section 922(g) and has, in fact, "repeatedly rejected as-applied Second Amendment challenges to § 922(g)." *See Kanter,* 919 F.3d at 443. Certainly, the Seventh Circuit in *Kanter* noted that it "left room for as-applied challenges" to Section 922(g). 919 F.3d at 443 (citing *Williams,* 616 F.3d at 693). ("[W]e recognize that 922(g)(1) may be subject to an overbreadth challenge at some point because of its disqualification of all felons, including those who are non-violent."). But, to date, the Seventh Circuit has not done so.

In this regard, the Seventh Circuit is not unique. *Kanter* recognized that "only one federal court of appeals has upheld an as-applied Second Amendment challenge to § 922(g)"—namely, the Third Circuit "[i]n a fractured en banc decision," in which "a narrow majority of the Third Circuit (eight out of fifteen judges) held that § 922(g)(1) was unconstitutional" as applied to individuals convicted of misdemeanor offenses. *Id.* at 443 (citing *Binderup v. Att'y Gen. United States of Am.*, 836 F.3d 340,

356 (3d Cir. 2016)). On the other hand, *Kanter* noted, the Fifth, Sixth, Ninth, Tenth, and Eleventh Circuits "have suggested that § 922(g)(1) is always constitutional as applied to felons as a class, regardless of their individual circumstances or the nature of their offenses." *Id.* at 442. *Kanter* also explained that the Fourth, Eighth, and D.C. Circuits, like the Seventh, "have left room for as-applied challenges," but have never "actually upheld [an as-applied challenged] in practice." *Id.* at 443. Finally, *Kanter* observed that while the First Circuit "has not foreclosed as applied-challenges . . . it has expressed some skepticism about them." *Id.* Defendant has presented no reason why this Court should set aside the great weight of this authority to consider—and find meritorious—an "as applied" challenge to Section 922(g)'s constitutionality.

Even if this Court were inclined to do so, there is no question here that defendant is a convicted felon, that is, a non-law abiding citizen who is not covered under the Second Amendment. As detailed above, he has a criminal history that includes a conviction for a violent offense (attempted armed robbery), despite defendant's assertion to the contrary, possession of a controlled substance, and possession of a stolen motor vehicle. There is no question, therefore, that defendant is among the class of individuals constitutionally prohibited from possessing firearms under § 922(g)(1) and, therefore, that his as-applied challenge fails.

## III.    CONCLUSION

For the reasons stated above, the Court should deny defendant's motion to dismiss.

<div style="margin-left: 50%;">

Respectfully submitted,
JOHN R. LAUSCH, JR.
United States Attorney

By: *s/ Scott M. Edenfield*
    SCOTT M. EDENFIELD
    ANNE L. YONOVER
    Assistant United States Attorneys
    219 South Dearborn Street
    Chicago, Illinois 60604
    (312) 353-5277

</div>

Dated:     February 27, 2023

# EXHIBIT A

**Federal District Court Rulings Upholding Constitutionality
of 18 U.S.C. § 922(g)(1) Following *New York State Rifle & Pistol Ass'n v.
Bruen,* 142 S. Ct. 2111 (2022)**

1. *United States v. Gleaves*, No. 3:22-cr-14, Dkt. No. 116 (M.D. Tenn. Feb. 6, 2023)
2. *United States v. Bacchus*, No. 2:22-cr-450, Dkt. No. 28 (C.D. Cal. Feb. 2, 2023)
3. *United States v. Isaac*, No. 5:22-cr-117, Dkt. No. 27, 2023 WL 1415597 (N.D. Ala. Jan. 31, 2023)
4. *United States v. Taylor*, No. 3:22-cr-22, Dkt. No. 32, 2023 WL 1423725 (E.D. Ky. Jan. 31, 2023)
5. *United States v. Barber*, No. 4:20-cr-384, Dkt. No. 118, 2023 WL 1073667 (E.D. Tex. Jan. 27, 2023)
6. *United States v. Hester*, No. 1:22-cr-20333, Dkt. No. 39 (S.D. Fla. Jan. 26, 2023)
7. *United States v. Brown*, No. 2:20-cr-260, Dkt. No. 186, 2023 WL 424260 (E.D. Pa. Jan. 26, 2023)
8. *United States v. Rush*, No. 4:22-cr-40008, Dkt. No. 46, 2023 WL 403774 (S.D. Ill. Jan. 25, 2023)
9. *Davis v. United States*, No. 5:22-cv-224, Dkt. No. 1, 2023 WL 373172 (E.D. Ky. Jan. 24, 2023)
10. *Battles v. United States*, No. 4:23-cv-63, Dkt. No. 2, 2023 WL 346002 (E.D. Mo. Jan. 20, 2023)
11. *United States v. Gordon*, No. 1:14-cr-312, Dkt. No. 170, 1:22-cv-2949, Dkt. No. 3, 2023 WL 336137 (N.D. Ga. Jan. 20, 2023)
12. *Shipley v. Hijar*, No. 3:23-cv-11, Dkt. No. 3, 2023 WL 353994 (W.D. Tex. Jan. 20, 2023)
13. *United States v. Smith*, No. 2:19-cr-505, Dkt. No. 183 (C.D. Cal. Jan. 19, 2023)
14. *United States v. Tucker*, No. 2:22-cr-17, Dkt. No. 30, 2023 WL 205300 (S.D. W.Va. Jan. 17, 2023)
15. *United States v. Robinson*, No. 4:22-cr-70, Dkt. No. 39, 2023 WL 214163 (W.D. Mo. Jan. 17, 2023)
16. *United States v. Serrano*, No. 3:21-cr-1590, Dkt. No. 65 (S.D. Cal. Jan. 17, 2023)
17. *United States v. Whittaker*, No. 1:22-cr-272, Dkt. No. 33 (D.D.C. Jan. 12, 2023)
18. *United States v. Spencer*, No. 2:22-cr-561, Dkt. No. 24 (S.D. Tex. Jan 12, 2023)
19. *United States v. Garrett*, No. 1:18-cr-880, Dkt. No. 144 (N.D. Ill. Jan. 11, 2023)
20. *United States v. Moore*, No. 3:20-cr-474, Dkt. No. 100, 2023 WL 154588 (D. Or. Jan. 11, 2023)
21. *United States v. Jordan*, No. 3:22-cr-1140, Dkt. No. 39, 2023 WL 157789 (W.D. Tex. Jan. 11, 2023)
22. *Campiti v. Garland*, No. 3:22-cv-177, Dkt. No. 27 (D. Conn. Jan. 10, 2023)
23. *United States v. Coleman*, No. 3:22-cr-8, Dkt. No. 117, 2023 WL 122401 (N.D. W.Va. Jan. 6, 2023)

24. *United States v. Medrano*, No. 3:21-cr-39, Dkt. No. 65, 2023 WL 122650 (N.D. W.Va. Jan. 6, 2023)

25. *United States v. Olson*, No. 1:22-cr-20525, Dkt. No. 33 (S.D. Fla. Jan. 5, 2023)

26. *United States v. Wondra*, No. 1:22-cr-99, Dkt. No. 35, 2022 WL 17975985 (D. Idaho Dec. 27, 2022)

27. *United States v. Jones*, No. 5:22-cr-376, Dkt. No. 59 (W.D. Okla. Dec. 23, 2022)

28. *United States v. Williams*, No. 1:21-cr-362, Dkt. No. 29, 2022 WL 17852517 (N.D. Ga. Dec. 22, 2022)

29. *United States v. Dawson*, No. 3:21-cr-293, Dkt. No. 19, 2022 WL 17839807 (W.D.N.C. Dec. 21, 2022)

30. *United States v. Goins*, No. 5:22-cr-91, Dkt. No. 32 (E.D.Ky. Dec. 21, 2022)

31. *United States v. Mugavero*, No. 3:22-cr-1716, Dkt. No. 29 (S.D. Cal. Dec. 19, 2022)

32. *United States v. Hunter*, No. 1:22-cr-84, Dkt. No. 23, 2022 WL 17640254 (N.D. Ala. Dec. 13, 2022)

33. *United States v. Spencer*, No. 2:22-cr-106, Dkt. No. 141, 2022 WL 17585782 (E.D. Va. Dec. 12, 2022)

34. *United States v. Dotson*, No. 3:22-cr-1502, Dkt. No. 26 (S.D. Cal. Dec. 12, 2022)

35. *United States v. Tran*, No. 3:22-cr-331, Dkt. No. 63 (S.D. Cal. Dec. 12, 2022)

36. *United States v. Fencl*, No. 3:21-cr-3101, Dkt. No. 81 (S.D. Cal. Dec. 7, 2022)

37. *United States v. Perez-Garcia*, No. 3:22-cr-1581, Dkt. No. 70 (S.D. Cal. Dec. 6, 2022)

38. *United States v. Walker,* No. 2:19-cr-234, Dkt. No. 83 (E.D. Cal. Dec. 6, 2022)

39. *United States v. Grinage*, No. 5:21-cr-399, Dkt. No. 51, 2022 WL 17420390 (W.D. Tex. Dec. 5, 2022)

40. *United States v. Wagoner*, No. 4:20-cr-18, Dkt. No. 262, 2022 WL 17418000 (W.D. Va. Dec. 5, 2022)

41. *United States v. Gay*, No. 4:20-cr-40026, Dkt. No. 412 (C.D. Ill. Dec. 5, 2022)

42. *Shelby-Journey-Egnis v. United States*, No. 2:21-cr-20535, Dkt. No. 53 (E.D. Mich. Dec. 5. 2022)

43. *United States v. Glaze*, No. 5:22-cr-425, Dkt. No. 23 (W.D. Okla. Dec. 1, 2022)

44. *United States v. Ford*, No. 4:21-cr-179, Dkt. No. 52, 2022 WL 17327499 (W.D. Mo. Nov. 29, 2022)

45. *United States v. Jones*, No. 4:20-cr-354, Dkt. No. 78, 2022 WL 17327498 (W.D. Mo. Nov. 29, 2022)

46. *United States v. Jacobs*, No. 2:22-cr-160, Dkt. No. 28 (C.D. Cal. Nov. 28, 2022)

47. *United States v. Cage*, No. 3:21-cr-68, Dkt. No. 41, 2022 WL 17254319 (S.D. Miss. Nov. 28, 2022)

48. *United States v. Willis*, No. 1:22-cr-186, Dkt. No. 36 (D. Colo. Nov. 23, 2022)

49. *United States v. Teerlink*, No. 2:22-cr-24, Dkt. No. 33, 2022 WL 17093425 (D. Utah Nov. 21, 2022)

50. *United States v. Good*, No. 1:21-cr-180, 2022 WL 18107183 (W.D. Mo. Nov. 18, 2022), report and recommendation adopted, 2023 WL 25725 (W.D. Mo. Jan. 3, 2023)

51. *United States v. Nixon*, No. 3:22-cr-149, Dkt. No. 66 (S.D. Cal. Nov. 18, 2022)

52. *United States v. Hill*, No. 4:22-cr-249, Dkt. No. 42 (S.D. Tex. Nov. 17, 2022)

53. *United States v. Blackburn*, No. 1:22-cr-209, Dkt. No. 28 (M.D. Pa. Nov. 17, 2022)

54. *United States v. Mitchell*, No. 1:22-cr-111, Dkt. No. 43 (S.D. Ala. Nov. 17, 2022)

55. *United States v. Dumont*, No. 1:22-cr-53 (D.N.H. Nov. 14, 2022)

56. *United States v. Baker*, No. 2:20-cr-301, Dkt. No. 179, 2022 WL 16855423 (D. Utah Nov. 10, 2022)

57. *United States v. Carpenter*, No. 1:21-cr-86, Dkt. No. 38, 2022 WL 16855533 (D. Utah Nov. 10, 2022)

58. *United States v. Gray*, No. 1:22-cr-247, Dkt. No. 22, 2022 WL 16855696 (D. Colo. Nov. 10, 2022)

59. *United States v. Moore*, No. 2:21-cr-121, Dkt. No. 81 (W.D. Pa. Nov. 9, 2022)

60. *United States v. Reese*, No. 2:19-cr-257, Dkt. No. 193 (W.D. Pa. Nov. 8, 2022)

61. *United States v. Young*, No. 2:22-cr-54, Dkt. No. 47 (W.D. Pa. Nov. 7, 2022)

62. *United States v. Butts*, No. 9:22-cr-33, Dkt. No. 33 (D. Mont. Oct. 31, 2022)

63. *United States v. Burton*, No. 3:22-cr-362, Dkt. No. 48 (D. S.C. Oct. 28, 2022)

64. *United States v. Carleson*, No. 3:22-cr-32, Dkt. No. 39 (D. Ak. Oct. 28, 2022)

65. *United States v. Grant*, No. 3:22-cr-161, Dkt. No. 44, 2022 WL 16541138 (D. S.C. Oct. 28, 2022)

66. *Walker v. United States*, No. 3:20-cv-31, Dkt No. 16, 2022 WL 16855696 (S.D. Cal. Oct. 28, 2022)

67. *United States v. Law*, No. 2:20-cr-341, Dkt. No. 60 (W.D. Pa. Oct. 27, 2022)

68. *United States v. Borne*, No. 1:22-cr-83, Dkt. No. 35 (D. Wyo. Oct. 24, 2022)

69. *United States v. Minter*, No. 3:22-cr-135, Dkt. No. 33 (M.D. Pa. Oct. 18, 2022)

70. *United States v. Melendez-Machado*, No. 3:22-cr-634, Dkt. No. 32, 2022 WL 17684319, (W.D. Tex. Oct. 18, 2022)

71. *United States v. Raheem*, No. 3:20-cr-61, Dkt. No. 389, 2022 WL 10177684 (W.D. Ky. Oct. 17, 2022)

72. *United States v. Ridgeway*, No. 3:22-cr-175, Dkt. No. 32, 2022 WL 10198823 (S.D. Cal. Oct. 17, 2022)

73. *United States v. Trinidad*, No. 3:21-cr-398, Dkt. No. 99, 2022 WL 10067519 (D.P.R. Oct. 17, 2022)

74. *United States v. Carrero*, No. 2:22-cr-30, Dkt. No. 50, 2022 WL 9348792 (D. Utah Oct. 14, 2022)

75. *United States v. Ortiz*, No. 3:21-cr-2503, Dkt. No. 91 (S.D. Cal. Oct. 14, 2022)

76. *United States v. Riley*, No. 1:22-cr-163, Dkt. No. 37, 2022 WL 7610264 (E.D. Va. Oct. 13, 2022)

77. *United States v. Price*, No. 2:22-cr-97, Dkt. No. 48, 2022 WL 6968457 (S.D. W.Va. Oct. 12, 2022)

78. *United States v. King*, No. 7:21-cr-255, Dkt. No. 50, 2022 WL 5240928 (S.D.N.Y. Oct. 6, 2022)

79. *United States v. Daniels*, No. 1:03-cr-83, Dkt. No. 69, 2022 WL 5027574 (W.D.N.C. Oct. 4, 2022)

80. *United States v. Charles*, No. 7:22-cr-154, Dkt. No. 48, 2022 WL 4913900 (W.D. Tex. Oct. 3, 2022)

81. *United States v. Williams*, No. 3:21-cr-478, Dkt. No. 76 (S.D. Cal. Sept. 30, 2022)

82. *United States v. Campbell*, No. 5:22-cr-138, Dkt. No. 64 (W.D. Okla. Sept. 27, 2022)

83. *United States v. Siddoway*, No. 1:21-cr-205, Dkt. No. 54, 2022 WL 4482739 (D. Idaho Sept. 27, 2022)

84. *United States v. Perez*, No. 3:21-cr-508, Dkt. No. 78 (S.D. Cal. Sept. 26, 2022);

85. *United States v. Collette*, No. 7:22-cr-141, Dkt. No. 66, 2022 WL 4476790 (W.D. Tex. Sept. 25, 2022)

86. *United States v. Delpriore*, No. 3:18-cr-136, Dkt. No. 287 (D. Ak. Sept. 23, 2022)

87. *United States v. Coombes*, No. 4:22-cr-189, Dkt. No. 39, 2022 WL 4367056 (N.D. Okla. Sept. 21, 2022)

88. *United States v. Hill*, No. 3:21-cr-107, Dkt. No. 70, 2022 WL 4361917 (S.D. Cal. Sept. 20, 2022)

89. *United States v. Rojo*, No. 3:21-cr-682, Dkt. No. 50 (S.D. Cal. Sept. 14, 2022)

90. *United States v. Cockerham*, No. 5:21-cr-6, Dkt. No. 31 (S.D. Miss. Sept. 13, 2022)

91. *United States v. Jackson*, No. 0:21-cr-51, Dkt. No. 114, 2022 WL 4226229 (D. Minn. Sept. 13, 2022)

92. *United States v. Havins*, No. 3:21-cr-1515, Dkt. No. 62 (S.D. Cal. Sept. 12, 2022)

93. *United States v. Patterson*, No. 7:19-cr-231 (S.D.N.Y. Sept. 9, 2022)

94. *United States v. Doty*, No. 5:21-cr-21, Dkt. No. 34 (N.D. W.Va. Sept. 9, 2022)

95. *United States v. Harper*, No. 5:21-cr-4085, Dkt. No. 39, 2022 WL 8288406 (N.D. Iowa Sept. 9, 2022)

96. *United States v. Burrell*, No. 3:21-cr-20395, Dkt. No. 34, 2022 WL 4096865 (E.D. Mich. Sept. 7, 2022)

97. *United States v. Randle*, No. 3:22-cr-20, Dkt. No. 34 (S.D. Miss. Sept. 6, 2022)

98. *United States v. Ingram*, No. 0:18-cr-557, Dkt. No. 1714, 2022 WL 3691350 (D. S.C. Aug. 25, 2022)

99. *United States v. Nevens*, No. 2:19-cr-774, Dkt. No. 121 (C.D. Cal. Aug. 15, 2022)

100. *United States v. Farris*, No. 1:22-cr-149, Dkt. No. 29 (D. Colo. Aug. 12, 2022)

101. *United States v. Adams*, No. 1:20-cr-628 (S.D.N.Y. Aug. 10, 2022)

102. *United States v. Ramos*, No. 2:21-cr-395, Dkt. No. 31 (C.D. Cal. Aug. 5, 2022)

103. *United States v. Doss*, No. 4:21-cr-74, Dkt. No 126 (S.D. Iowa Aug. 2, 2022)

104. *United States v. Maurice*, No. 7:22-cr-48 (S.D.N.Y. Jul. 14, 2022)