**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | No. 21 CR 52 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| CHRISTOPHER COLEMAN, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION AND ORDER

On December 6, 2020, Chicago Police Department ("CPD") officers arrested Defendant Christopher Coleman at or near 5158 West Fulton Street, Chicago, Illinois, and recovered a loaded Glock Model 22 .40 caliber handgun with an extended magazine and an attached Glock switch. On January 25, 2021, the government charged Coleman by indictment with knowing possession of a firearm by a felon, in violation of 18 U.S.C. § 922(g)(1). Coleman now moves to suppress evidence and quash his arrest on the grounds that the officers conducted an illegal search that invaded Coleman's reasonable expectation of privacy, resulting in an unlawful detention and arrest. Because Coleman had no reasonable expectation of privacy in the passenger seat of a car on a public street, however, the Court denies his motion to suppress.

## BACKGROUND[1]

On December 6, 2020 at 12:55 a.m., a CPD officer viewing a Police Observation Device

("POD")[2] located at the intersection of North Laramie Avenue and West Fulton Street in

Chicago, Illinois observed Coleman in the passenger seat of a Chevrolet holding a black handgun

in his right hand.  The CPD officer relayed the information about Coleman to three other CPD

officers, identifying the Chevrolet's location and describing Coleman as a black male wearing a

black jacket, white shirt, and green pants.  The three CPD officers set off to investigate, and,

within a few minutes of the initial POD sighting, they encountered the Chevrolet parked on

North Latrobe Avenue.  The officers observed Coleman exit the parked car from the passenger

side.  Having determined that he matched the description of the passenger in the Chevrolet

captured on the POD, the officers arrested Coleman.  They also recovered the gun from the area.

## ANALYSIS

The Fourth Amendment affords individuals the right to "be secure in their persons,

houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

"A search occurs either when the government physically intrudes without consent upon a

constitutionally protected area in order to obtain information, or when an expectation of privacy

that society is prepared to consider reasonable is infringed."  *United States v. Thompson*, 811

---

[1] The Court takes the facts in the background section from the parties' briefs, as well as the arrest report and video footage provided by the government.  The parties do not disagree on any of the material facts, and so the Court did not hold an evidentiary hearing prior to issuing this Opinion.  *See United States v. Curlin*, 638 F.3d 562, 564 (7th Cir. 2011) ("District courts are required to conduct evidentiary hearings only when a substantial claim is presented and there are disputed issues of material fact that will affect the outcome of the motion.").

[2] According to the CPD website, a POD is a "portable unit[] . . . mounted on city light poles" containing "remote-controlled and viewable cameras . . . positioned to view and record potential crime in high-risk areas."  Chicago Police Department, *Police Observation Device "POD" Cameras*, http://home.chicagopolice.org/inside-cpd/police-observation-device-pod-cameras/.

F.3d 944, 948 (7th Cir. 2016) (citations omitted) (internal quotation marks omitted); *see also Carpenter v. United States*, --- U.S. ----, 138 S. Ct. 2206, 2213 (2018) ("When an individual 'seeks to preserve something as private,' and his expectation of privacy is 'one that society is prepared to recognize as reasonable,' we have held that official intrusion into that private sphere generally qualifies as a search and requires a warrant supported by probable cause." (quoting *Smith v. Maryland*, 442 U.S. 735, 740 (1979))).

Coleman's suppression motion focuses on his claim that he had a "reasonable expectation of privacy in the car in which he was a passenger," and thus that the use of the POD to see into the car amounted to an illegal search. Doc. 56 ¶ 9. He contends that, without the POD footage, the officers lacked probable cause to stop the car and make the arrest. The government counters that Coleman did not have a reasonable expectation of privacy in the passenger seat of a car driving on a public street, and so the use of the POD did not constitute a search in the context of the Fourth Amendment.[3] Thus, according to the government, the POD footage provided the CPD officers with reasonable suspicion to detain Coleman, and, in combination with Coleman's subsequent actions when approached by the officers, provided probable cause for his arrest.

To determine whether Coleman had a reasonable expectation of privacy while riding in the Chevrolet, the Court considers (1) whether Coleman "manifested a subjective expectation of privacy in the object of the challenged search," and (2) whether "society [is] willing to recognize

---

[3] The government does not argue that Coleman does not have standing to object to the alleged search of the car because he was only a passenger in it. *See United States v. Watson*, 558 F.3d 702, 705 (7th Cir. 2009) (passenger in car could not challenge search of the car because "he claims neither a property nor a possessory interest in the car, so even an illegal search of it would not have infringed *his* Fourth Amendment rights."). The Court does not address this issue, instead focusing, as the parties do, on whether the use of the POD violated Coleman's reasonable expectation of privacy. *Cf. United States v. Blackman*, No. 18-CR-00728, 2023 WL 3346822, at *15 (N.D. Ill. May 10, 2023) ("While the Seventh Circuit has not spoken explicitly to the question, numerous courts have held that a passenger does not lose his expectation of privacy in a bag, backpack, luggage, and the like simply because he carries them into another person's vehicle.").

that expectation as reasonable." *United States v. Tuggle*, 4 F.4th 505, 513 (7th Cir. 2021)

(quoting *California v. Ciraolo*, 476 U.S. 207, 211 (1986)). Initially, Coleman likely did not

manifest a subjective expectation of privacy in his activities in the Chevrolet. Efforts to conceal

what could otherwise be seen or heard by others can signal an individual's subjective expectation

of privacy. *Katz v. United States*, 389 U.S. 347, 353 (1967) (defendant established expectation

of privacy in his conversation by going inside a phone booth and closing the door, thus

prohibiting outsiders from hearing what he said). But here, aside from the fact that he traveled at

night, Coleman did not take any efforts to conceal his gun and instead openly held it in his hand

while in a car without tinted windows that traveled through a well-lit area. *See Tuggle*, 4 F.4th at

513 ("Nothing in the record suggests that Tuggle erected any fences or otherwise tried to shield

his yard or driveway from public view, which might have signaled he feared the wandering eye

or camera lens on the street. We therefore do not confront the more challenging situation in

which the government intentionally places cameras to see *over* a fence to observe a private

residence in a manner unavailable to a ground-level passerby").

　　As for the objective part of the inquiry—considering the expectations of privacy society

is willing to accept as reasonable—"[w]hat a person knowingly exposes to the public, even in his

own home or office, is not a subject of Fourth Amendment protection." *Katz*, 389 U.S. at 351;

*California v. Greenwood*, 486 U.S. 35, 41 (1988) ("[P]olice cannot reasonably be expected to

avert their eyes from evidence of criminal activity that could have been observed by any member

of the public."). In this case, a person on the street could have seen into the Chevrolet and

observed Coleman's gun, meaning it remained in plain view and thus does not deserve Fourth

Amendment protection. *See Texas v. Brown*, 460 U.S. 730, 740 (1983) ("There is no legitimate

expectation of privacy shielding that portion of the interior of an automobile which may be

4

viewed from outside the vehicle by either inquisitive passerby or diligent police officers." (citation omitted)); *United States v. Ware*, 914 F.2d 997, 1000 (7th Cir. 1990) ("[T]here is no expectation of privacy and thus no 'search' when a person merely observes something through an automobile window"); *United States v. Porter*, No. 21-cv-00087, 2022 WL 124563, at *3 (N.D. Ill. Jan. 13, 2022) ("Generally, individuals do not possess a reasonable expectation of privacy for information they voluntarily display to the public, especially when traveling in automobiles.").

That being said, Coleman's complaint appears to be that CPD's use of the POD changes the calculus because the POD unreasonably augmented the officers' observation abilities. *See United States v. Jones*, 565 U.S. 400, 412 (2012) ("It may be that achieving the same result through electronic means, without an accompanying trespass, is an unconstitutional invasion of privacy, but the present case does not require us to answer that question."). But "'[n]othing in the Fourth Amendment prohibit[s] the police from augmenting the sensory faculties bestowed upon them at birth with such enhancement as science and technology afforded them in' certain instances." *Tuggle*, 4 F.4th at 514 (alterations in original) (quoting *United States v. Knotts*, 460 U.S. 276, 282 (1983))). To determine the permissible use of technology, the Supreme Court has drawn a line between commonplace technology that captures what is already exposed to the public, which does not run afoul of the Fourth Amendment, and technology "that is not in general public use, to explore details of the home that would previously have been unknowable without physical intrusion," which does. *Kyllo v. United States*, 533 U.S. 27, 40 (2001) (use of thermal imaging device that detects heat levels within a residence constituted a Fourth Amendment search requiring a warrant); *see also Dow Chem. Co. v. United States*, 476 U.S. 227,

238–39 (1986) (use of plane to take enhanced aerial photographs from navigable airspace did not violate the Fourth Amendment).

Applying *Kyllo*, the Seventh Circuit recently found that the isolated use of pole cameras did not violate the Fourth Amendment because the government employed "a technology in public use, while occupying a place [the government] was lawfully entitled to be, to observe plainly visible happenings." *Tuggle*, 4 F.4th at 511. *Tuggle* dictates resolution of the question here: although the use of the POD "undoubtedly g[a]ve [the government] more detailed information than naked-eye views, [it] did not do so to a degree that give[s] rise to constitutional problems." *Id.* at 516 (first, second, and fourth alterations in original) (citation omitted) (internal quotation marks omitted); *see also id.* ("[I]f some thirty years ago extensive aerial photography of a 2,000-acre industrial property, or of marijuana plants otherwise concealed at ground level, did not qualify as Fourth Amendment searches, then certainly ground-level video footage of an unobstructed home from a public vantage point is not a search." (citations omitted)); *United States v. Carrazco-Martinez*, Case No. 19-cr-00351-2, 2022 WL 425729, at *2 (N.D. Ill. Feb. 11, 2022) (use of five pole cameras aimed at defendant's house and garage to surveil defendant for three months "did not invade [the defendant's] reasonable expectation of privacy"); *United States v. Tirado*, Case No. 16-CR-168, 2018 WL 3245204, at *13 (E.D. Wis. Jan. 26, 2018) ("[T]he Fourth Amendment does not preclude law enforcement from making observations from a public vantage . . . . [or] from using technology to enhance or substitute for surveillance they could lawfully conduct in-person."), *report & recommendation adopted*, 2018 WL 1806056 (E.D. Wis. Apr. 16, 2018). Therefore, the use of the POD to view into the Chevrolet did not

violate the Fourth Amendment, meaning Coleman has not identified a basis for granting his suppression motion.[4]

## CONCLUSION

For the foregoing reasons, the Court denies Coleman's motion to suppress [56].

Dated: August 30, 2023

SARA L. ELLIS
United States District Judge

---

[4] Because Coleman bases his argument as to the lack of probable cause only on the claimed illegality of the search, the Court's conclusion that the search did not violate the Fourth Amendment means his challenge to probable cause necessarily fails. As a result, the Court does not address the government's arguments concerning reasonable suspicion and probable cause.